UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────────────────────────

Bing GUAN; Go NAKAMURA; Mark
ABRAMSON; Kitra CAHANA; and Ariana
DREHSLER,

              *Plaintiffs*,

v.

Chad WOLF, Acting Secretary of Homeland
Security; Mark MORGAN, Acting Commissioner,
U.S. Customs and Border Protection; and
Matthew ALBENCE, Acting Director, U.S.
Immigration and Customs Enforcement,

              *Defendant*s.

───────────────────────────────────────

No. 19-CV-6570 (PKC/JO)

(Hon. Pamela K. Chen)


# DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
# MOTION TO DISMISS COMPLAINT

SETH D. DUCHARME
Acting United States Attorney
Eastern District of New York

EKTA R. DHARIA
Assistant United States Attorney
Eastern District of New York
271A Cadman Plaza East
Brooklyn, NY 11201-1820
(718) 254-7520
ekta.dharia@usdoj.gov

*Attorneys for Defendants*

Served: August 14, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS DO NOT HAVE STANDING. ................................................................. 2

        A.    Plaintiffs Lack Standing to Seek Declaratory Judgment as a Form of Relief. ........................................................................................................... 2

        B.    Plaintiffs Lack Standing to Seek Injunctions for Expungement and for Information about Government Records as a Form of Relief. ....................... 4

        C.    Plaintiffs Lack Standing to Bring Their Sole Claim under the First Amendment. ............................................................................................... 5

    II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR THEIR FIRST AMENDMENT CAUSE OF ACTION. ................................................................ 5

        A.    Plaintiffs' Opposition Confirms That Plaintiffs Have Implausibly Strapped a Fourth Amendment Claim into an Alleged First Amendment Violation. ........................................................................................ 5

            1.    Plaintiffs' Assertion that the Border Searches Were "Not Routine" and Served "No Valid Immigration or Customs Purpose" Are Implausible ......................................................................... 6

            2.    Plaintiffs' Opposition Grossly Mischaracterizes the Border Search and Stop Jurisprudence. ................................................................. 8

        B.    Plaintiffs' Opposition Does Nothing to Salvage Their Allegations that Plaintiffs Were Targeted Because of Their Role as Journalists. ...................... 9

        C.    Plaintiffs' Opposition Fails to Rescue any First Amendment Claim Premised on the Journalist's Qualified Privilege. ..................................... 10

        D.    Plaintiffs Have Not Plausibly Alleged any Chilling Effect from Defendants' Actions. ............................................................................ 12

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

## Cases

*Alasaad v. Nielsen*, 419 F. Supp. 3d 142 (D. Mass. 2019) ...................................................................3

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ...........................................................................................11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................................................2

*Davis v. Federal Election Comm'n*, 554 U.S. 724 (2008) ............................................................2, 3, 5

*Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999) .......................................................11

*Haig v. Agee*, 453 U.S. 280 (1981) ........................................................................................................7

*Hedgepeth v. Washington Metropolitan Area Transit Auth.*, 386 F.3d 1148 (D.C. Cir. 2004) ............4

*Laird v. Tatum*, 408 U.S. 1 (1972) ......................................................................................................12

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) ...................................................................2

*Paton v. La Prade*, 524 F.2d 862 (3d Cir. 1975) ..................................................................................5

*Singer v. Fulton Cty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) ...................................................................12

*Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) ................................................................................6, 8

*Town of Chester, New York v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ..........................................2

*United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019) ...................................................................9

*United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019) .........................................................................9

*United States v. Flores-Montano*, 541 U.S. 149 (2004) ...........................................................6, 7, 8, 11

*United States v. Irving*, 452 F.3d 110 (2d Cir. 2006) ...........................................................................6

*United States v. Molina-Gomez*, 781 F.3d 13 (1st Cir. 2015) ............................................................8, 9

*United States v. Montoya de Hernandez*, 473 U.S. 531 (1985) ............................................................6

*United States v. Ramsey*, 431 U.S. 606 (1977) .....................................................................................8

**PRELIMINARY STATEMENT**

Plaintiffs allege violations of their First Amendment rights from when they crossed the United States border in 2018 and 2019 and were questioned by CBP officers during secondary inspection—a routine inspection to which everyone crossing the border may be subject. Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing. As shown in Defendants' opening brief, Plaintiffs have not alleged that they have suffered or will suffer an injury-in-fact fairly traceable to Defendants to vest the Court with subject matter jurisdiction, or that a declaratory judgment would redress their alleged injury. Nor have Plaintiffs demonstrated standing to seek an injunction for expungement or information about the disclosure of Government records. Plaintiffs' assertion on opposition—that they can invoke standing over their *entire* complaint based on the isolated injury of the ongoing retention of Government records—is backwards. Plaintiffs must demonstrate standing over *each* claim and *each* form of relief—a burden they have not discharged. Plaintiffs' response to Defendants' arguments regarding the lack of standing necessitates dismissal of the entire complaint at the outset.

Even if there were subject matter jurisdiction—and there is not—dismissal is warranted for failure to state Plaintiffs' sole cause of action arising under the First Amendment. Plaintiffs' counterarguments regarding their First Amendment claim fall of their own weight. Plaintiffs have still not plausibly alleged that they were targeted on account of their identities as journalists. Nor have Plaintiffs shown that they were compelled to provide confidential sources to Defendants in violation of any journalist's privilege. Plaintiffs, moreover, have conceded that Defendants' alleged actions had no chilling effect on their expressive activities. Plaintiffs' attempt to bootstrap what is, in reality, a Fourth Amendment claim into an alleged First Amendment violation fails, given the paramount Government interest in protecting the Nation's security, and the narrowly tailored means used by the U.S. Customs and Border Protection ("CBP") officers ("CBPOs") to obtain information regarding threats to border security.

At bottom, what Plaintiffs seek is a journalist's exception to the decades-old border search doctrine. If accepted, that expansive theory of liability would dramatically extend the reach of the First

Amendment and would gut the border search doctrine. The result would be the creation of a gaping hole for any journalist to enter the United States freely, without needing to undergo questioning at the border regarding their occupation or activities they undertook during their international travels—questioning *all international travelers* may experience at the border. That is a right no court has recognized; indeed, such an expansion would significantly curtail the CBPOs' abilities to protect the Nation's security and borders. Plaintiffs' complaint should thus be dismissed in its entirety.

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS DO NOT HAVE STANDING.

The complaint should be dismissed for lack of subject matter jurisdiction because Plaintiffs have not demonstrated standing to seek declaratory judgment or an injunction for expungement and information about the disclosure of Government records for their sole cause of action under the First Amendment. *See* Defendants' Memorandum in Support of Motion to Dismiss Complaint ("Mem.") at 26-29. To establish standing, Plaintiffs bear the burden to prove (a) they have suffered an "injury-in-fact" or face a "credible threat" of imminent future injury; (b) the injury is "fairly traceable" to Defendants' challenged behavior; and (c) the injury is "likely to be redressed by a favorable ruling." *See id.* at 23-24; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Plaintiffs must demonstrate standing for "each claim [they] seek[] to press" and for "each form of relief that is sought." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); *see Town of Chester, New York v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("'[The Supreme Court's] standing decisions make clear that 'standing is not dispensed in gross.'"). "Thus, *with respect to each asserted claim*, '[a] plaintiff must always have suffered a distinct and palpable injury to [her]self.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (emphasis in original)).

#### A. Plaintiffs Lack Standing to Seek Declaratory Judgment as a Form of Relief.

Plaintiffs have made no effort to establish—let alone meet their burden to prove—standing to seek a declaratory judgment that Defendants violated the First Amendment. *See* Compl. at 35; Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Dismiss Complaint ("Opp.") at 27-30. Plaintiffs nowhere assert any past or future injury fairly traceable to Defendants from the border stops or searches. *See* Mem. at 26-29. Plaintiffs have not demonstrated any injury-in-fact: Plaintiffs voluntarily complied with questioning during border inspections, were asked primarily about the nature of their work and international travels, and were not forced to reveal any journalistic sources. *See* Mem. at 26-28; Firing Decl. Exhs. 2, 4, 6, 8, 10. Nor have Plaintiffs alleged any credible threat of future injury under the First Amendment, as they have crossed the United States border numerous times without incident since the border crossings alleged in the complaint. *See* Mem. at 28-29; Firing Decl. Exhs. 1, 3, 5, 7, 9.

The only "injury" Plaintiffs have asserted is the "ongoing retention" of "records … regarding the unlawful questioning of Plaintiffs." *See* Opp. at 28. But Plaintiffs have it backwards. Plaintiffs cannot demonstrate standing on their *declaratory judgment* form of relief based on the retention of records for which they seek *expungement*. *See Davis*, 554 U.S. at 734 (plaintiffs must demonstrate standing for "each form of relief that is sought"). Plaintiffs must provide an independent basis for *each* claim and *each* form of relief—a requirement the cases they cite make clear, but that Plaintiffs gloss over and wholly disregard. *See* Opp. at 28; *see, e.g.*, *Alasaad v. Nielsen*, 419 F. Supp. 3d 142, 151-54 (D. Mass. 2019) (plaintiffs' allegations regarding standing to seek injunctive or declaratory relief and standing to seek expungement were based on separate facts and analyzed separately). Because Plaintiffs have not alleged a separate injury to justify the declaratory relief they seek, they lack standing to seek such relief.

In any event, Plaintiffs have failed to address—let alone demonstrate—the third element of standing, redressability. Plaintiffs have not shown how a declaratory judgment would redress the only purported injury they claim: the retention of records. *See* Opp. at 27-30. Nor can Plaintiffs make such a claim, as those two forms of relief are wholly distinct and arise out of different harms. *See Davis*, 554 U.S. at 734. As such, Plaintiffs have failed to demonstrate standing to seek a declaratory judgment.

### B. Plaintiffs Lack Standing to Seek Injunctions for Expungement and for Information about Government Records as a Form of Relief.

Plaintiffs, likewise, have not met their burden to prove standing to seek "an injunction requiring Defendants to expunge any records they have retained regarding the unlawful questioning of Plaintiffs." *See* Opp. at 28; Compl. at 35. Nor have Plaintiffs discharged their burden to show standing to seek "an injunction requiring Defendants … to inform Plaintiffs whether those records have been disclosed to other agencies, governments, or individuals." *See* Opp. at 28.

Although Plaintiffs have asserted "[t]he ongoing retention of this information constitutes the injury that entitles Plaintiffs to injunctive and declaratory relief," that threadbare assertion is insufficient to show standing. *See* Opp. at 28. Indeed, Plaintiffs have not shown any injury from the retention of those records or the lack of information, let alone one sufficient for purposes of Article III standing. *See id.* Nor have Plaintiffs demonstrated any credible threat of imminent future injury from those assertions. *See id.* At most, Plaintiffs have established that these records show a list of Plaintiffs' previous travels and a factual summary of Plaintiffs' border inspections. *See* Mem. at 28-29. Indeed, these records show that Plaintiffs did not experience *any* issues during some inspections. *See id.*; Firing Decl. Exhs. 1, 3, 5, 7, 9 (indicating that Plaintiffs have traveled numerous times since the incidents alleged in the complaint without incident). Plaintiffs' barebones assertion falls far short of meeting their burden to demonstrate standing for expungement or disclosure of information.

Plaintiffs cite a hodgepodge of cases in support of their standing argument, but those cases demonstrate the type of injury Plaintiffs must allege—and have not alleged—to demonstrate standing to seek expungement or the disclosure of information. *See* Opp. at 28. Contrary to the plaintiff in *Hedgepeth v. Washington Metropolitan Area Transit Auth.*, 386 F.3d 1148, 1152-53 (D.C. Cir. 2004), for instance, Plaintiffs have neither alleged they have been arrested or detained, nor demonstrated a credible threat of imminent future detention or arrest from the retention of these records. *See* Opp. at 28. Plaintiffs have also not alleged that their educational or employment opportunities have been harmed, nor have they demonstrated

a credible threat of such a harm. *See Paton v. La Prade*, 524 F.2d 862, 868 (3d Cir. 1975) (standing, but not relief, for expungement where student's FBI file "possibly could endanger her future educational and employment opportunities"). *See* Opp. at 28. Plaintiffs, moreover, have not alleged that the records are unconstitutional or even unlawful, that anything in those records was inaccurate, or that these records contained criminal warrant or "watchlist" designations that have caused them harm or prevented them from traveling internationally. As Plaintiffs have failed to discharge their burden on standing to seek injunctive relief, dismissal is warranted.

### C. Plaintiffs Lack Standing to Bring Their Sole Claim under the First Amendment.

Plaintiffs have likewise failed to make any showing of standing for the only cause of action they have alleged: violation of the First Amendment claim. *See generally* Compl.; *see also* Opp. at 27-30. Plaintiffs appear to seek to assert standing over *the entire complaint* based on a purported injury that goes only to *one form of relief*: the "ongoing retention of this information." *See* Opp. at 28. That is an end-run around the standing requirements. Plaintiffs must demonstrate the elements of standing—injury, traceability, and redressability—for "each claim" brought. *See Davis*, 554 U.S. at 734. Plaintiffs' standing arguments regarding expungement cannot establish standing over the complaint as whole. Dismissal of the entire complaint is thus wholly warranted based on that lack of standing.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR THEIR FIRST AMENDMENT CAUSE OF ACTION.

### A. Plaintiffs' Opposition Confirms That Plaintiffs Have Implausibly Strapped a Fourth Amendment Claim into an Alleged First Amendment Violation.

Plaintiffs have bootstrapped a Fourth Amendment claim into an alleged First Amendment violation—and have failed to establish that claim in light of the United States' paramount interest in protecting its borders. *See* Mem. at 8-12. Plaintiffs' opposition rings hollow because it is premised on implausible allegations and mischaracterizations of the border search jurisprudence. *See* Opp. at 9-13. The Court should thus dismiss the complaint.

### 1. *Plaintiffs' Assertion that the Border Searches Were "Not Routine" and Served "No Valid Immigration or Customs Purpose" Are Implausible.*

Plaintiffs' opposition underscores their attempt to squeeze a Fourth Amendment claim into a First Amendment cause of action. *See* Opp. at 6-13. Critically, Plaintiffs repeatedly decry their border stops and searches as "not routine"—a legal term of art that carries significance under the Fourth (not First) Amendment. *See* Opp. at 9-12; *see also United States v. Flores-Montano*, 541 U.S. 149, 153 (2004) (the Government has "plenary authority to conduct *routine searches and seizures* at the border, without probable cause or a warrant" under the Fourth Amendment (emphasis added)). Plaintiffs' repeated assertions that their border stops were "not routine" are not plausible because they have no grounding in law or fact. *See* Opp. at 9-12. The law is clear that "routine" searches include "those searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which, unlike strip searches, do not substantially infringe on a traveler's privacy rights." *Tabbaa v. Chertoff*, 509 F.3d 89, 98 (2d Cir. 2007) (quoting *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006)). Non-routine searches, by contrast, are "more invasive searches" like "strip, body cavity, or involuntary x-ray searches." *Id.* (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 541 n.4 (1985)).

Plaintiffs contend that their border searches were "not routine" by repeatedly asserting that same conclusory phrase, without offering any factual basis to underpin that bald assertion. *See* Opp. at 9-12. Plaintiffs never allege that they underwent an intrusive body or cavity search. *See generally* Compl; *Montoya de Hernandez*, 473 U.S. at 541 n.4. Rather, the alleged searches were limited to Plaintiffs' luggage and outer clothing—searches that fall squarely within the scope of "routine" border searches. *See* Mem. at 6-7; *Irving*, 452 F.3d at 123. Plaintiffs also allege that they were subjected to secondary inspections for brief periods; were asked non-invasive questions about the purpose of their visit, residency, and contact information; and were asked about their travel abroad and knowledge of the migrant caravan, which were reasonable and related to the critical national security concerns present at that time. *See* Mem. at 6-7, 10-11. Boiled down, Plaintiffs' allegations constitute nothing more than the type of *routine* border searches upheld by the

Supreme Court. *See id.* Plaintiffs' barebones assertion that those actions somehow amounted to a "not routine" search does not suffice at the pleading stage. *See id.*

Plaintiffs also repeatedly contend that there was "no valid immigration or customs purpose" for the border searches. *See* Opp. at 9-10, 13, 20. But that conclusory assertion is implausible because it lacks any factual basis. As Defendants' opening brief makes clear, the border stops and searches were conducted for a critical purpose: to secure the Nation's borders. *See* Mem. at 3-5, 17. CBP's primary mission is to secure the Nation's borders, and CBPOs are stationed at ports of entry to carry out that mission and to enforce this Nation's laws. *See id.* At the time of Plaintiffs' border crossings, CBP had serious concerns about the sharp rise of migrant entrants into the United States, the associated possible violence, and the potential violation of federal laws resulting from the migrant caravan. *See id.* at 17. In light of those factors, the CBPOs took appropriate measures to assess the intentions and knowledge of those believed to be involved with or have information about a pressing national security concern. *See* Mem. at 17; *see also* Compl. ¶¶ 21-26, 28.

Although Plaintiffs attempt to minimize those concerns and contend that those investigatory reasons are not valid immigration or customs purposes, that assertion is nonsensical. *See Opp.* at 9-10, 13, 20. As the Supreme Court has repeatedly held, security of the Nation's border is of chief concern to the Government. *See, e.g., Flores-Montano*, 541 U.S. at 153 (the United States has a "paramount interest" in protecting its territorial integrity); *Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[I]t is 'obvious and unarguable' that no governmental interest in more compelling than the security of the Nation."). That CBPOs would take reasonable steps to investigate potential border security concerns is at the heart of CBP's mission. *See* Mem. at 17. Contrary to Plaintiffs' conclusory allegations, the facts amply demonstrate that the searches were conducted for the most significant immigration and customs purpose there is: to protect the Nation's security. The questioning Plaintiffs complain about pertain to their purpose for and activities during their international travel and their occupation (which was their stated reason for international travel). These areas are certainly related to an authorized purpose of a border inspection following international travel.

Defendants' Reply Memorandum in Further Support of Motion to Dismiss
*Guan v. Wolf*, No. 19-CV-6570 (PKC/JO) (EDNY)
Page 7

### 2. *Plaintiffs' Opposition Grossly Mischaracterizes the Border Search and Stop Jurisprudence.*

Plaintiffs' attempt to distinguish their claim from the Fourth Amendment context falls flat because it is premised on mischaracterizations of the law. *See* Opp. at 6-13. Plaintiffs incredulously contend that border searches and stops are justified by "narrow underlying rationales." *See id.* at 10. But that assertion turns the border search jurisprudence on its head. The Supreme Court has expressly held that it is "axiomatic" that the United States has the "inherent authority to protect" and a "paramount interest" in protecting its territorial integrity at the border. *See Flores-Montano*, 541 U.S. at 152 (the United States' "interest in preventing the entry of unwanted persons and effects is at its zenith" at the border). In light of that broad authority, "[t]ime and again, [the Supreme Court] ha[s] stated that 'searches made at the border … are *reasonable simply by virtue of the fact that they occur at the border*." *Id.* (emphasis added). Plaintiffs' portrayal of the United States' border authority grossly mischaracterizes that broad legal authority. *See* Opp. at 10-11.

Although Plaintiffs purport to rely on a litany of cases, those cases support Defendants—not Plaintiffs. *See* Opp. at 6-8, 11-12. Both *United States v. Ramsey*, 431 U.S. 606 (1977), and *Tabbaa*, 509 F.3d 89, *see* Opp. at 6-7, for instance, explicitly recognized that "the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country" is "reasonable simply by virtue of the fact that they occur at the border." *Ramsey*, 431 U.S. at 616; *Tabbaa*, 509 F.3d at 97. The crux of both decisions, moreover, is that the Court found *no* Fourth or First Amendment violation. *See Ramsey*, 431 U.S. at 624; *Tabbaa*, 509 F.3d at 103. That Plaintiffs rely on cases that undermine their position underscores the weakness of their argument.

Defendants have never argued that CBP should have "carte blanche" authority at the border. *See* Opp. at 11. Defendants argue only that the specific border inspections to which Plaintiffs in this case were subjected constitute nothing more than routine border searches that have, time and again, been upheld as constitutional. *See* Mem. at 13, 17. Plaintiffs' reliance on three non-binding decisions—*United States v.*

*Molina-Gomez*, 781 F.3d 13 (1st Cir. 2015), *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019), and *United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019)—has no relevance here, because those cases recognize border search limits not present here: forensic searches of travelers' electronic devices. *See* Opp. at 11-12.

Plaintiffs ultimately seek special rules that apply only to journalists at the border. *See* Mem. at 11. That preposterous assertion cannot stand. The complaint should be dismissed in its entirety.

### B. Plaintiffs' Opposition Does Nothing to Salvage Their Allegations that Plaintiffs Were Targeted Because of Their Role as Journalists.

Plaintiffs' attempt on opposition to rescue their allegations that they were targeted for secondary inspection on account of their role as journalists falls flat. *See* Opp. at 13-18. Plaintiffs rely, for instance, on the existence of the alleged "database" or PowerPoint presentation in which Plaintiffs were allegedly named to assert that they were targeted on account of their professional identities. *See id.* at 15-16. But that contention is illogical. That alleged "database" is nothing more than a list of various individuals, the vast majority of whom are *not* journalists. *See* Compl. ¶ 33. That list included *fifty-nine* individuals—only *ten* of whom were listed with the term "media" or "journalist." *Id.* The remaining *forty-nine* individuals hailed from various other sectors and backgrounds. *See id.*; Mem. at 13. And, although Plaintiffs decry the "X" markings on that list, that "X" is present on the photos of at least twenty-five individuals—most of whom are *not* journalists. *See* Opp. at 16; Compl. ¶ 33. That "X," moreover, does not appear on every journalist's photograph. *See id.* Even Plaintiff Kitra Cahana appears on that list with no "X" on her photograph, despite allegations that she has undergone secondary inspections at the border. *See* Compl. ¶¶ 33, 104-28. At bottom, Plaintiffs have cherry picked a small group of individuals from that list to construct a weak targeting theory that lacks any factual basis.

Plaintiffs also assert that they were targeted because, when they were sent to secondary inspection, they were not the "subjects of an investigation." Opp. at 16-17. But that contention undermines Plaintiffs' First Amendment claims. If, as Plaintiffs assert, the CBPOs, were not focused on investigating *Plaintiffs*, then it is not plausible that the CBPOs were *targeting* Plaintiffs as journalists or seeking to impinge *Plaintiffs'*

journalistic activities. At the border, moreover, a CBPO may send any traveler to secondary inspection with—or without—suspicion. *See* Mem. at 4. The CBPO may, for instance, refer an individual for secondary inspection to address concerns related to admissibility, customs, national security, or other laws that may arise—reasons having nothing to do with whether they are subjects of an investigation. *See id.*

Plaintiffs are also dismissive of the weighty concerns present at the time of Plaintiffs' referral to secondary inspection. There were significant national security concerns arising from the rise of migrant entrants into the United States at that time. *See* Mem. at 13-14. Even if Plaintiffs' inclusion on that purported list was a reason they were questioned at the border, such questioning would be entirely consistent with CBP's mission to protect the borders. *See id.* Those factors—which have nothing to do with Plaintiffs' professional identities—amply demonstrate that Plaintiffs' referral to secondary inspection was utterly unrelated to their professions. *See id.* Plaintiffs' allegations fall far short of demonstrating that they were in any way targeted for secondary inspection on the basis of their roles as journalists.

### C. Plaintiffs' Opposition Fails to Rescue any First Amendment Claim Premised on the Journalist's Qualified Privilege.

Plaintiffs offer next to nothing in response to Defendants' arguments regarding their failure to allege protection under the journalist's privilege.[1] As an initial matter, Plaintiffs have not plausibly alleged that they were compelled to disclose privileged information at the border. *See* Mem. 18-20. Although Plaintiffs assert that they "felt" as if they had no choice but to respond to the CBPOs' questions, repeatedly stating that Plaintiffs *felt* compelled does not make it reasonable or objectively true. *See* Opp. at 24-25. Nor does Plaintiffs' description of the circumstances of the secondary inspections, such as the allegations that Plaintiffs were "alone," in a "windowless room," or questioned for "an hour," remotely indicate that Plaintiffs were forcibly compelled to *answer questions*. *See id.* Indeed, despite the allegedly draconian

---

[1] Plaintiffs' response to Defendants' arguments that their actions were narrowly tailored to serve compelling Government interests, which is subsumed into their journalist's privilege argument, also fails. *See* Opp. at 20. Plaintiffs' contention rests on conclusory assertions that cannot survive at the pleading stage. *See id.* Plaintiffs' assertions that there was no "valid immigration or customs purpose" when there was a significant national security concern at that time, and that the CBPOs' questioning of Plaintiffs was not narrowly tailored to meet a significant compelling interest, despite the United States' paramount interest in protecting its border, ring hollow. *See* Mem. at 17-18.

circumstances Plaintiff Ariana Drehsler underwent, she was released from secondary inspection after *refusing* to provide the requested information about her journalistic activities. *See* Mem. at 19; Compl. ¶ 146. The fact remains that Plaintiffs have not demonstrated any objective indicia of compulsion required for a journalist's privilege claim. *See* Mem. at 18-20 (no allegations of subpoena, required testimony under oath, or use of force). Plaintiffs have not met their burden to establish compulsion. *See id.* at 15-16.

Plaintiffs assert that the journalist's privilege applies because they have disclosed "non-confidential information." *See* Opp. at 21-24. But the journalist's privilege protects against the disclosure of confidential *sources*—not confidential *information*. *See Branzburg v. Hayes*, 408 U.S. 665, 702 (1972) (reporter's privilege protects from the disclosure of "confidential sources"). None of the allegations Plaintiffs have provided constitute disclosure of Plaintiffs' journalistic *sources*. *See* Opp. at 22. Plaintiffs, rather, provided responses to standard questions about their reasons for travel (business or pleasure), follow-up questions about the nature of their business travel, and questions related to the national security concerns related to the entrance of migrants at that time. *See id.* Critically, no Plaintiff was asked about the tips they received, such as what to photograph, where to take those photographs, or such other journalistic *sources*. *See id.*

Even if Plaintiffs had made any allegations regarding the disclosure of any confidential sources of their photographs (and they have not), that still does not warrant the protection of the journalist's privilege. The disclosure of confidential sources may be ordered upon a "clear and specific showing" that the information is: (a) "highly material and relevant," (b) "necessary or critical to the maintenance of the claim," and (c) "not obtainable from other available sources." *Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29, 33 (2d Cir. 1999). Here, any information regarding Plaintiffs' sources that was disclosed was "highly material and relevant" and "necessary or critical" to the United States' "paramount interest" in protecting its borders. *See Flores-Montano*, 541 U.S. at 132. The CBPOs were facing significant security threats at the time and potential violations of federal law arising from the entrants of migrants at that time, and their questions regarding Plaintiffs' knowledge of the migrant caravan meets that standard. The information, moreover, was "not obtainable" elsewhere. *See Gonzales*, 194 F.3d at 33. Plaintiffs were at a port of entry,

Defendants' Reply Memorandum in Further Support of Motion to Dismiss
*Guan v. Wolf*, No. 19-CV-6570 (PKC/JO) (EDNY)
Page 11

where the CBPOs were making on-the-ground decisions regarding the viability of entrants to enter the United States. The only way the CBPOs could have obtained information about Plaintiffs' knowledge regarding the potential security concerns was to ask them questions about their knowledge and to search through their luggage at the time of the search. That amply justifies the need for disclosure of those items. Plaintiffs thus cannot invoke the protection of journalist's privilege.

### D. **Plaintiffs Have Not Plausibly Alleged any Chilling Effect from Defendants' Actions.**

In a final effort to muddy the First Amendment waters, Plaintiffs absurdly assert that "alleging a chilling effect is not necessary" to establish a First Amendment claim. *See* Opp. at 27. But the law is clear that Plaintiffs must make *specific, non-speculative, and non-subjective* allegations indicating a concrete deprivation of their First Amendment rights. *See* Mem. at 22; *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (allegations of "subjective 'chill'" insufficient). Plaintiffs appear to be seeking to sidestep this critical component by making vague assertions that Plaintiffs "have reason to fear" that they will be subject to secondary inspections and that they "will be chilled" from engaging in First Amendment activity. *See* Opp. at 27. But those allegations are subjective at best. Plaintiffs have pointed to no concrete, objective, non-speculative indication that their First Amendment rights have been reasonably chilled. *See* Mem. at 22. Nor can they because, as Plaintiffs concede, they "have subsequently been permitted to enter the United States without being subject to secondary inspection and questioning about their work." *See* Opp. at 27. Absent those critical allegations, Plaintiffs' First Amendment claim cannot survive. *See id.* at 23; *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (First Amendment claim dismissed where plaintiff made "vague allegations" regarding the chilling effect and "continued to publish his newspaper").

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Defendants' opening brief, the complaint must be dismissed in its entirety and with prejudice for lack of subject matter jurisdiction and failure to state an actionable claim.

Dated: Brooklyn, New York  
      August 14, 2020

SETH D. DUCHARME  
Acting United States Attorney  
Eastern District of New York  
271A Cadman Plaza East  
Brooklyn, NY 11201-1820

By:   <u>/s/ Ekta R. Dharia</u>  
EKTA R. DHARIA, Assistant U.S. Attorney  
Eastern District of New York  
(718) 254-7520  
ekta.dharia@usdoj.gov