**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1000

**By ECF**  August 25, 2022

The Honorable Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re: *Guan, et al. v. Mayorkas, et al.*, No. 1:19-cv-06570 (PKC/MMH)**

Dear Judge Henry:

Pursuant to the parties' status report dated August 4, 2022 (Dkt. 79), and the Court's order dated August 8, 2022, Plaintiffs file this letter motion to compel Defendants Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP), and Immigration and Customs Enforcement ("ICE") to comply with two threshold issues necessary to enable a reasonable scope of document discovery in this case. Specifically, Plaintiffs seek an order:

1. Overruling Defendants' objection that documents concerning the development, implementation, or termination of Operation Secure Line sought by Plaintiffs' Request No. 7 are not "relevant"; and compelling Defendants to produce (a) such documents of which Defendants are actually aware, and (b) such additional documents that are identified by reasonably-tailored search terms developed in consultation with Plaintiffs.

2. Overruling Defendants' objection that documents concerning journalists or members of the media in connection with Operation Secure Line sought by Plaintiffs' Request Nos. 10, 26, and 28 are not "relevant"; and compelling Defendants to produce (a) such documents of which Defendants are actually aware, and (b) such additional documents that are identified by reasonably-tailored search terms developed in consultation with Plaintiffs.

As reported in the parties' August 4 letter, the parties have discussed these issues on a number of occasions in a good faith attempt to resolve them, but have reached an impasse.[1]

---

[1] In the August 4 status report, Plaintiffs also raised the issue of whether data stored in the personal electronic accounts and personal devices of Defendants' employees are within Defendants' possession, custody, or control. Defendants have since provided additional information to Plaintiffs concerning their investigation into these potential sources of ESI. As a result of Defendants' additional disclosures, Plaintiffs believe that this issue is not yet ripe for presentation to the Court. Plaintiffs therefore do not move to compel on this issue at this time, and instead reserve their rights to bring an appropriate discovery motion at a later date.

I. **Background**

Plaintiffs are five photojournalists whom Defendants unlawfully stopped and questioned at the border in 2018–2019 as part of Operation Secure Line (or "OSL"), a government intelligence-gathering operation in which Defendants detained and questioned individuals—including journalists, lawyers, and activists—because of their perceived connection to people traveling by caravan to reach the U.S.-Mexico border in late 2018. Operation Secure Line has been the subject of numerous news reports (e.g., Ex. C), at least two investigations by the Department of Homeland Security Office of the Inspector General (e.g., Ex. D), and at least one Congressional inquiry (e.g., Ex. E).

Plaintiffs brought this action to obtain a remedy for Defendants' violation of their First Amendment rights. As the Court explained when it denied Defendants' motion to dismiss, Plaintiffs have plausibly alleged that Defendants violated their rights (and thus are entitled to discovery) on two separate grounds: (1) Defendants "target[ed] them for additional scrutiny at the United States-Mexico border based on their membership in the media and association with their sources," and (2) Defendants "compell[ed] them to disclose constitutionally protected information about their news-gathering and associational activities" through questioning at the border. Memorandum & Order, Dkt. 38 at 38–39 (Mar. 30, 2021). Among other things, Plaintiffs seek injunctive relief that Defendants be ordered to expunge the records that Defendants retain regarding the unlawful questioning of Plaintiffs, and to disclose whether they disseminated those records to others. *Id.* at 20; *see also* Complaint, Dkt. 1 at 35 (Nov. 20, 2019).

The parties have been discussing the scope and parameters for document discovery in this case since March 2022. In that time, Defendants have refused to agree to two threshold issues necessary for Plaintiffs to obtain a reasonable scope of discovery in response to their requests for production under Rule 34. *See* Fed. R. Civ. P. 37(a)(4) (an incomplete disclosure or response must be treated as a failure to disclose or respond).

Without a resolution of these foundational issues, the parties cannot complete their ongoing discussions of a reasonably-tailored approach to searching for and producing responsive materials—including ESI—in this matter. *See Zhulinska v. Niyazov Law Grp.*, 2021 WL 5281115, at *2 (E.D.N.Y. Nov. 12, 2021) ("Collection, review, and production of ESI present special challenges and require cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI.").

II. **Legal Standards**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "[T]he party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on grounds of burden or expense bears the burden of proving the discovery is in fact unduly burdensome and/or expensive." *Zhulinska*, 2021 WL 5281115, at *2. "'Relevance' under Rule 26 is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Leytman v. Transp. Sec. Admin.*, 2021 WL 4430189, at *2 (E.D.N.Y. Sept. 1, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

### III. Documents Concerning Operation Secure Line Are Relevant and Properly Subject to Discovery

Plaintiffs have requested that Defendants produce "[a]ll Documents, including Communications, concerning Operation Secure Line ('OSL'), including the contemplation, formulation, development, implementation, operation, enforcement, modification, or termination of OSL." Ex. A at Request No. 7. Despite the central role of Operation Secure Line in this case, Defendants have stated that they will produce documents only "to the extent they apply to Plaintiffs' activities alleged in the Complaint." Ex. B at Response No. 7. According to Defendants, nothing else is relevant in response to this request.

Defendants' response improperly narrows the scope of reasonable discovery to which Plaintiffs are entitled.

First, Defendants' response is unclear. Defendants have not adequately explained what they mean by documents that "apply to Plaintiffs' activities alleged in the Complaint." The issues in this case involve Defendants' activities, not just "Plaintiffs' activities." *Defendants* violated Plaintiffs' First Amendment rights when, among other things, *Defendants* improperly targeted Plaintiffs for additional scrutiny at the border and *Defendants* compelled them to disclose protected information about their news-gathering activities. There is no reasonable basis on which to limit production to documents that "apply to Plaintiffs' activities."

Second, even assuming that Defendants intend to produce all documents that may mention or refer to Plaintiffs (and, to be clear, that is not the unambiguous meaning of Defendants' production commitment), that scope of discovery still would be improperly narrow. Documents concerning Operation Secure Line are relevant to issues including how Defendants decided to target individuals for additional scrutiny, why Defendants targeted journalists, what Defendants were hoping to achieve as a result of that targeting, and whether any governmental interest that Defendants claim to be advanced by such targeting and questioning could have been achieved through means significantly less restrictive of associational freedoms. *See* Memorandum & Order, Dkt. 38 at 38–52 (discussing elements of Plaintiffs' First Amendment claim). Documents bearing on these issues are relevant regardless of whether the document mentions or refers specifically to Plaintiffs or Plaintiffs' activities.

Third, Plaintiffs have clarified the scope of this request for Defendants in order to ensure that it is reasonably tailored. In the parties' discovery discussions, Defendants explained that one of their objections to this request involves the possibility that it might be construed as seeking purely operational documents such as agent work assignments, supply manifests, or budget expenditures. Plaintiffs have advised Defendants that they do not seek such operational documents in response to this request, and instead clarified that they are seeking documents concerning the development, implementation, and termination of Operation Secure Line. Even with that clarification, however, Defendants object on grounds of relevance.

Fourth, Defendants' fallback argument that this request is unduly burdensome can be adequately addressed through a reasonably-tailored set of custodians and search terms. For purposes of Defendants' searches for responsive ESI, the parties have discussed and nearly finalized a list of approximately 32 custodians identified by CBP and 8 custodians identified by

ICE.[2] To date, CBP and ICE have run only a filtering set of search terms, which the parties designed to enable Defendants to identify a reasonable universe of custodial materials for collection. CBP has advised that those initial filtering terms yielded approximately 123,000 documents, and ICE has advised that those same terms yielded approximately 19,500 documents. These initial results are not excessive in light of the time period and subject matter at issue, and suggest that a reasonably-tailored set of terms indeed can be devised—notably, the current results yield an average of just 3,850 documents per CBP custodian, and 2,500 per ICE custodian. Plaintiffs provided Defendants with a revised set of proposed search terms on August 15 and are willing to work with Defendants in continuing to refine those search terms.

Nevertheless, Defendants' current relevancy objection makes it impossible for the parties to complete their discussions regarding a reasonably-tailored set of search terms. The parties need to know what categories of materials should be targeted by the search terms and what documents must be produced as a result.

To illustrate the issue, Defendants have told Plaintiffs that they will not produce documents concerning the development, implementation, or termination of Operation Secure Line *even if those documents are returned by agreed-upon search terms*. In other words, even if the parties could devise a set of search terms that yielded a mere 100 documents for review, and 50 of them concerned the development, implementation, or termination of Operation Secure line but did not "apply to Plaintiffs' activities alleged in the Complaint," then *Defendants still would not produce them*. Likewise, Defendants' current relevancy objection means that even if Defendants are actually aware of documents concerning the development, implementation, or termination of Operation Secure Line (i.e., without needing to search for them), Defendants would not produce those documents either.

Defendants' refusal to produce documents concerning the development, implementation, or termination of Operation Secure Line on grounds of relevance is improper. The Court should overrule the objection and direct Defendants to produce (a) such documents of which Defendants are actually aware, and (b) such additional documents that are identified by reasonably-tailored search terms developed in consultation with Plaintiffs.

### IV. Documents Concerning Journalists and Members of the Media in Operation Secure Line Are Relevant and Properly Subject to Discovery

Plaintiffs have requested that Defendants produce three categories of documents, all related to journalists and members of the media (in addition to Plaintiffs) in connection with Operation Secure Line. *See* Ex. A at Request Nos. 10, 26, 28. Similar to their objections regarding documents concerning Operation Secure Line, Defendants have stated that they will produce only documents that "relat[e] to the inclusion of Plaintiffs in the PowerPoint" (i.e., Defendants' way of referring to the database or documents that listed the names of people targeted for additional scrutiny at the border), "to the extent they apply to Plaintiffs' activities

---

[2] Plaintiffs reserve the right to seek the production of materials from additional custodians should discovery later reveal that other persons or sources are likely to possess or contain relevant materials.

alleged in the Complaint," or "concern[] Plaintiffs and the PowerPoint." Ex. B at Response Nos. 10, 26, 28. According to Defendants, nothing else is relevant.

Again, Defendants' response improperly narrows the scope of reasonable discovery to which Plaintiffs are entitled.

First, Plaintiffs' requests are narrowly tailored. Plaintiffs are not seeking documents concerning any and all journalists or members of the media who cross the border. Rather, these requests all seek documents that specifically relate to Operation Secure Line or the list that Defendants developed to target persons in connection with Operation Secure Line. The requests seek documents concerning the actual or potential inclusion of journalists or members of the media on that list (Request No. 10), or documents concerning journalists or members of the media who were actually placed on the list and which have a connection with certain investigatory units or programs of Defendants that have been publicly identified as having a role in Operation Secure Line (Request Nos. 26, 28).

Second, these documents are relevant. Of the 59 individuals profiled on the targeting list, ten were identified as a journalist or member of the media—the five Plaintiffs here plus five others. *See* Compl. ¶ 33. In addition to being relevant for the same reasons that documents concerning Operation Secure Line are relevant (see Part III, above), the documents sought by these requests are also relevant to issues including whether Defendants' conduct toward Plaintiffs differed from Defendants' conduct toward other journalists or members of the media in connection with Operation Secure Line or the targeting list.

Third, as with the documents concerning Operation Secure Line, Defendants' objections that these three requests are unduly burdensome can be adequately addressed through the same reasonably-tailored set of custodians and search terms. The threshold issue is not one of burden, but of relevance. Again, Defendants' objection to these three requests on grounds of relevance makes it impossible for the parties to complete their discussions regarding a reasonably-tailored set of search terms. As before, under Defendants' current position, Defendants would not produce *any* documents responsive to these requests except for those that fit within Defendants' narrow view of relevance, even if such documents were identified by an agreed-upon set of search terms or if Defendants actually know of such documents.

Defendants' refusal to produce documents concerning journalists and members of the media in connection with Operation Secure Line sought by Plaintiffs' Request Nos. 10, 26, and 28 on grounds of relevance is improper. The Court should overrule the objection and direct Defendants to produce (a) such documents of which Defendants are actually aware, and (b) such additional documents that are identified by reasonably-tailored search terms developed in consultation with Plaintiffs.

Respectfully Submitted,

Andrew W. Hahn

cc: All counsel of record by ECF