**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1000

**By ECF**  April 25, 2023

The Honorable Marcia M. Henry
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: ***Guan, et al. v. Mayorkas, et al.***, No. **1:19-cv-06570 (PKC/MMH)**

Dear Judge Henry:

Plaintiffs file this letter motion to compel Defendants Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), and Immigration and Customs Enforcement ("ICE") to: (1) remove the overbroad redactions that Defendants have applied to produced documents based on an unjustified invocation of the Law Enforcement Privilege, as reflected in **Appendix A** and **Exs. 1–10** to this letter; (2) produce the specifically-identified documents set forth in **Appendix B**; and (3) provide complete answers to the interrogatories identified in **Part III**, below. The parties have conferred in a good faith attempt to resolve their differences, and although they have resolved some issues, they have not been able to resolve the ones below.

I.   **Law Enforcement Privilege Redactions**

The vast majority of documents that Defendants have produced contain redactions invoking the Law Enforcement Privilege. More than 70% of Defendants' 1,709 produced documents contain such redactions. In many cases, the redactions are so extensive that Plaintiffs cannot realistically evaluate the document—indeed, more than 50 documents are redacted in their entirety. Appendix A to this letter lists examples of documents with overbroad redactions. Plaintiffs request that the Court order Defendants to remove these redactions for the six categories of content discussed below, and order Defendants to identify and remove similar redactions across the universe of Defendants' production.

Defendants' redactions on their face do not reflect a proper or narrowly-tailored invocation of the Law Enforcement Privilege, and even if they did, the invocation would yield to Plaintiffs' need for the information in this case. The Law Enforcement Privilege is "a qualified common law privilege, derived from the executive privilege, protecting the confidentiality of certain information related to *ongoing* law enforcement activities." *Adams v. City of New York*, 993 F. Supp. 2d 306, 312 (E.D.N.Y. 2014) (emphasis added). To establish that the privilege applies, Defendants must show that the information they seek to withhold represents the type of information that the privilege is intended to protect. *Id.* at 312–13 (listing factors). Because the privilege is fundamentally intended to protect the integrity of present or future law enforcement investigations, it should be applied to information about past activities only to the extent that "future investigations may be *seriously impaired*" by the disclosure. *Compare In re The City of New York*, 607 F.3d 923, 944, 948 (2d Cir. 2010) (emphasis added) (upholding protection for reports tied to city-wide undercover investigation strategy, which identified multiple undercover

agents and offered no additional evidentiary value), *with Coleman v. Cnty. of Suffolk*, 174 F. Supp. 3d 747, 756 (E.D.N.Y. 2016) (ordering public disclosure of police department internal affairs reports), *judgment aff'd* 685 F. App'x 69 (2d Cir. 2017); *see also Morissey v. City of New York*, 171 F.R.D. 85, 90–91 (S.D.N.Y. 1997) (privilege focuses "not on privacy concerns, but on the ability of the police department to conduct effective law enforcement").

Furthermore, because the Law Enforcement Privilege is a qualified privilege, even if it does apply "there are circumstances in which information subject to the privilege must nevertheless be disclosed." *In re The City of New York*, 607 F.3d at 940. Where (as here) a lawsuit is not frivolous and there is a "compelling need" for the information, the privilege should yield—if it applies at all—when "the public interest in nondisclosure" is outweighed by "the need of the litigant for access to the privileged information." *Id.* at 948.

Plaintiffs seek disclosure of six categories of redacted content, described below. Each involves critical information relevant to the key issues in this case. Despite the importance of this information, in the course of the parties' numerous conferences on these issues, Defendants have not proffered a "clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted." *Coleman*, 174 F. Supp. 3d at 756. Indeed, although Plaintiffs offered to specifically discuss each of the documents in Appendix A, Defendants declined that invitation—instead, Defendants elected to stand on their redactions wholesale and pointed to their privilege logs in this case (excerpted in Ex. 13). But those logs improperly state only "generalized reiterations of the policies underlying the privilege," *id.*, and in any event any theoretical risk of harm is ameliorated by the Protective Order in this case.

1. **Information Concerning Plaintiffs, Including Lookouts on Plaintiffs**. Defendants have redacted significant information that refers to or concerns Plaintiffs and the reasons why Defendants targeted Plaintiffs. Among other things, Defendants created TECS Records in which their officers summarized the stops at issue, yet Defendants have redacted key items such as the "██████████," parts of their agents' "██████████," the "██████████," the "██████████," and "██████████." Ex. 1 at 2–4.[1] Defendants contend that "██████████" and similar codes in TECS Records have no evidentiary value and are privileged, but the policy documents produced in this case discuss the meaning and make clear the relevance of such codes. *See, e.g.*, Ex. 3 at 9. Defendants also prepared various reports on Plaintiffs, yet they have withheld their agents' conversations about those reports, Ex. 4 at 2–3, important details in the reports, *id.* at 5–6, and withheld in full a file that is cryptically titled "██████████" (an apparent reference to Plaintiff Cahana), *id.* at 18. Defendants further prepared a lengthy "██████████" regarding encounters with journalists "██████████," yet extensively redacted the very sections that discuss Plaintiffs. Ex. 6 at 14–15, 17–19. And Defendants prepared a document summarizing the "████," "██████████," and "██████████" for the stops of Plaintiffs, yet redacted all of that content. Ex. 7 at 3–34. The redactions over "██████████" are particularly notable because parts of the TECS Records for Plaintiffs were apparently ██████████ such that, so far as Plaintiffs can tell, the true original narratives *have never been disclosed*.

2. **Information Concerning Members of the Media**. Many of the documents with redactions concerning Plaintiffs also redact information concerning other members of the media whom Defendants targeted. This information is crucial for Plaintiffs to understand why Defendants targeted members of the media as a group, and to compare Defendants' treatment of other members of the media with their treatment of Plaintiffs.

---

[1] Citations to exhibit pages refer to the ECF pagination (i.e., pages including the slip sheet).

April 25, 2023
Page 3

  3. Identities of Persons, Entities, or Governments. Defendants have redacted the identities of a number of persons, entities, or foreign governments referenced in the documents. This information is necessary for Plaintiffs to understand who was involved in the decisions that resulted in Defendants targeting them, and who received Plaintiffs' information from the targeting. For example, in one of the reports that Defendants prepared on Plaintiffs, Defendants redacted the persons or entities who they coordinated with during an event in ▉▉▉▉▉ where they ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 4 at 6. Similarly, in a database record for one of the Plaintiffs, Defendants redacted the persons who are listed in the "▉▉▉▉▉▉" as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 2 at 4–5. Defendants have not shown that these or similar individuals are involved in ongoing law enforcement activities relating to these past records, or if they are, shown how documents referencing the individuals' past activities would seriously impair future investigations.

  4. Development, Implementation, or Termination of OSL. Defendants appear to have redacted nearly all information that involves the development, implementation, or termination of Operation Secure Line, such as summaries of what happened in Operation Secure Line or specific events that occurred during Operation Secure Line. This information provides critical context to the circumstances under which Plaintiffs were targeted, and based on the document search criteria that Defendants have used, these materials appear to have been produced because they have a nexus to Plaintiffs or members of the media. For example, Defendants have fully redacted the content of a document titled "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉"—which may well be the "list of topics to explore in . . . caravan-related interviews" referenced in the OIG Report on Operation Secure Line. *Compare* Ex. 6 at 5, *with* Appendix B (Item B3). In another example of overbreadth, Defendants fully redacted the content of an "▉▉▉▉▉▉▉▉▉▉▉▉▉" for an event that was ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, while apparently disclosing *that very same document* to the public with far fewer redactions in response to a FOIA request in *NBC San Diego v. DHS*, No. 1:19-cv-01146 (D.D.C.). *Compare* Ex. 5 at 6–11 (Produced in this Case), *with* Ex. 11 (FOIA Production to NBC San Diego). Defendants contend that the Court ruled Plaintiffs were categorically not entitled to this information when it denied Plaintiffs' motion to compel on October 14, 2022. But that ruling held that it would be a burden "disproportionate to the claims in this case" for Defendants to undertake a broader search of ESI for documents concerning Operation Secure Line—not that such information can be withheld when it resides in a specifically identified and produced document. *See* ECF 87, Tr. 19:12–20:5.

  5. Policies and Procedures Concerning Lookouts. The key policy document governing the placement of lookouts in early 2019 was a 1990 document commonly referred to as the "TECS Directive." This directive appears to have ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Yet Defendants have made extensive redactions to the produced ▉▉▉▉▉▉▉▉▉▉▉▉▉, including in sections that discuss ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. 3 at 4–15. Plaintiffs need to know what Defendants' policies said about placing lookouts during the period at issue, so that they can address whether the lookouts Defendants placed on Plaintiffs complied with that policy.

  6. Content of DHS-OIG Memoranda. Defendants have produced memoranda from the DHS-OIG investigation into Operation Secure Line that reflect the findings by Defendants' own internal investigators. Yet Defendants have made extensive redactions to critical content, including content regarding the placement of lookouts on Plaintiffs and other persons, meetings with foreign government officials where ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, and witness perceptions of the targeting at issue in this case. Ex. 9 & Ex. 10. The Law Enforcement Privilege is not intended to shield records such as these from disclosure, which reflect the results of an inquiry into past conduct. *See Coleman*, 174 F. Supp. 3d at 756.

April 25, 2023
Page 4

## II. Documents that Should be Produced

Appendix B sets forth a list of specific documents that should be produced, because they are responsive to Plaintiffs' requests for production and relevant to the issues in this case. The related Requests for Production, and Defendants' responses, are excerpted in Ex. 14. These documents should be readily identifiable by Defendants, and any burden of producing them minimal.

## III. Defendants' Incomplete Answers to Interrogatories

Defendants have failed to provide complete answers to certain of Plaintiffs' interrogatories. Plaintiffs attach excerpts of the Interrogatories, and Defendants' answers, in Ex. 15. Plaintiffs request that the Court order DHS and ICE to provide answers to Interrogatories No. 1–5 in writing under oath, and order CBP to provide complete answers to Interrogatories Nos. 1, 2, and 5, as detailed below.

**A. Form of Answers**. Pursuant to Rule 33(b)(1)(B) of the Federal Rules of Civil Procedure, an interrogatory directed to a governmental agency must be answered by an "officer or agent, who must furnish the information available to the party." "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath," and "the person who makes the answers must sign them." *Id.* at (b)(3), (b)(5). Despite this requirement, Defendants DHS and ICE have not provided a sworn written answer to *any* of Plaintiffs' First Set of Interrogatories. Ex. 15 at 9–16. Instead, only CBP has given an answer. *See id.* Plaintiffs propounded these interrogatories on all three Defendants, and all three Defendants must answer on their own behalf. If the answer by DHS and ICE to an interrogatory is "no," or that DHS or ICE does "not have any responsive information," then that is a substantive answer which DHS and ICE must give in writing under oath. Furthermore, "[w]here a party, despite conducting a diligent inquiry, is nevertheless unable to provide a responsive answer, any efforts utilized should be set forth in detail to ensure a sufficient response is interposed." *See Edebali v. Bankers Standard Ins. Co.*, 2016 WL 4621077, at *2 (E.D.N.Y. Sept. 6, 2016).

**B. Interrogatory No. 1**. This Interrogatory requests that Defendants identify and provide information regarding communications between Defendants' agents and the government officials of foreign countries concerning any Plaintiff. Ex. 15 at 4. CBP's answer . Ex. 15 at 10–11.

Defendants' reference to ▉▉▉▉▉ is far from a complete answer. CBP has not identified when ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. CBP also has not stated whether any responsive communications separate from ▉▉▉▉▉ ▉▉▉▉▉ took place. Indeed, the DHS-OIG materials make clear that Interrogatory No. 1 cannot be answered by merely incorporating ▉▉▉▉▉, because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *See, e.g.*, Ex. 9 at 3–10; Ex. 12 at 25–28. Yet Defendants have not identified those ▉▉▉▉, and have redacted large parts of the DHS-OIG memoranda discussing this topic.

These details are critical to Plaintiffs' case. In another lawsuit related to Operation Secure Line, an email communication with Mexican government officials was central to the

April 25, 2023
Page 5

court's finding that Defendants had violated the law. *See Dousa v. DHS*, 2023 WL 2586301, at *20 (S.D. Cal. Mar. 21, 2023). Defendants must undertake a reasonably diligent investigation into the communications with foreign government officials about Plaintiffs, identify or refer Plaintiffs to those communications, and state that they are aware of no other communications.

**C. Interrogatory No. 2**. This Interrogatory requests that Defendants "state all bases Defendants had for initiating or continuing [the] stop or questioning" of Plaintiffs during each instance at issue this case. Ex. 15 at 4. CBP responded by stating in conclusory fashion that each Plaintiff was stopped "█████████████████████████," and by █████████████ █████████████. Ex. 15 at 12–13. (A version of one of the █████████████████ is attached as Ex. 1 at 2–3.) CBP's response is incomplete because it does not provide the *bases* for the "███████." Ex. 15 at 12–13. And the ███████████ that Defendants incorporate are themselves incomplete, because Defendants have redacted fields in the documents setting forth items such as the "█████████," "█████████," and "█████████████." Ex. 1 at 2–3. Defendants cannot answer this interrogatory by referring to documents from which they have withheld the responsive information. Defendants must state all the bases they had for stopping Plaintiffs.

**D. Interrogatory No. 5**. This Interrogatory requests that Defendants identify documents or communications once possessed by Defendants regarding any Plaintiff or Operation Secure Line that have become inaccessible or ceased to exist. By letter dated September 25, 2022, Plaintiffs narrowed this interrogatory to the specific custodians Defendants had by then disclosed in this lawsuit, as well as "any other ESI for which Defendants have actual knowledge that such ESI became inaccessible to Defendants or ceased to exist as of the date of the Interrogatories" and "any non-ESI documents." Ex. 15 at 5, 14. CBP has provided only a general answer that "████████████████████████████████████████████ ████████████████." Ex. 15 at 15. In an answer to a later interrogatory, CBP has now ██████ ████████████████. Ex. 15 at 21.

CBP's response to Interrogatory No. 5 is incomplete for two reasons. First, the answer does not "identify" which documents or communications were not preserved. As set forth in the Local Rules, "identify" means: "to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s)." *See* L.R. 26.3(c)(4). CBP must at least describe the content of the messages and the parties to the communications that were lost. Second, the OIG Report states that four CBP agents failed to preserve messages with Mexican government officials regarding Operation Secure Line. *See* Ex. 12 at 32. Although Defendants contend that they do not "know" who those persons are, each of these agents has actual knowledge of losing their WhatsApp messages, and it is inconceivable that Defendants cannot with a modicum of diligence determine who they are. Defendants must answer the interrogatory as to these communications.

Respectfully Submitted,

Andrew W. Hahn

cc:   All counsel of record by ECF
      (Counsel for Defendants also by Email)

Esha Bhandari
Scarlet Kim
Elizabeth Gyori
Sarah Taitz
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
125 Broad Street, 18th Floor
New York NY 10004
(212) 549-2500 (Telephone)
(212) 549-2583 (Fax)
ebhandari@aclu.org
scarletk@aclu.org
egyori@aclu.org
staitz@aclu.org

Anthony Gemmell
NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300 (Telephone)
(212) 607-3318 (Fax)
agemmell@nyclu.org

C. William Phillips
Andrew W. Hahn
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 841-1000 (Telephone)
(646) 441-9081 (Fax)
cphillips@cov.com
ahahn@cov.com

Megan A. Crowley*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000 (Telephone)
(202) 778-5112 (Fax)
mcrowley@cov.com

*Counsel for Plaintiffs*                    *Admitted Pro Hac Vice*

**Appendix A**
**Examples of Documents with Overbroad Redactions**

| No. | Example | Bates Beg. | Exhibit Pages with Redactions (Slip Sheet is Page 1) |
|---|---|---|---|
| Ex. 1 | | CBP_000980 | 2–3 |
| | | CBP_001147 | 4–5 |
| Ex. 2 | | CBP_000780 | 2–5 |
| | | CBP_000970 | 7 |
| Ex. 3 | | CBP_000944 | 3–15 |
| Ex. 4 | | CBP_002176 | 2–3 |
| | | CBP_002178 | 5, 6, 16 |
| | | CBP_002192 | 17 (Withheld Entirely) |
| Ex. 5 | | CBP_005617 | 2–5 |
| | | CBP_005621 | 6–11 |
| Ex. 6 | | CBP_007375 | 2, 4 |
| | | CBP_007426 | 5 |
| | | CBP_007427 | 6–22 (Plaintiffs at 14–15, 17–19) |
| Ex. 7 | | CBP_007512 | 2 |
| | | CBP_007513 | 3–34 (Plaintiffs at 3–4, 19, 27) |
| Ex. 8 | | CBP_009331 | 2 |
| | | CBP_009332 | 3–129 (Plaintiffs at 125) |
| Ex. 9 | | OIG-DHS_0000520 | 3–10 |
| Ex. 10 | | OIG-DHS_0000738 | 3–9 (Plaintiffs at 8) |

**Appendix B**
**Documents that Should be Produced**

| Item | RFPs (Ex. 14) | Documents Sought |
|---|---|---|
| B1 | 14, 15–19 | The historical versions, or audit logs, of Defendants' records of Plaintiffs sufficient to show each placement, modification, or removal of any lookout on each Plaintiff from October 2018 to present.[1] |
| B2 | 29 | The exhibits and attachments to each memorandum produced by the DHS Office of Inspector General. *See, e.g.*, Ex. 9. |
| B3 | 29 | The following subset of documents referenced in the OIG Report:<br>• The "list of general topics to explore in [the TTRT's] caravan-related interviews." OIG Report, Ex. 12 at 10.<br>• The communications by the Emergency Operation Center instructing TTRT officers to "create a report documenting the substance of the interviews." *Id.*, Ex. 12 at 10.<br>• The "reminder email to 'provide target list to [Government of Mexico]'" sent by FOB Official 2 to himself. *Id.*, Ex. 12 at 27.<br>• The email from FOB Official 3 "noting of the two rejected individuals, 'Ambos de los Alertados de la Lista…'" or "Both are Alerts on the List." *Id.*, Ex. 12 at 27.<br>• The "'internal' and 'non-binding' agreement between NTC and Mexico's Intelligence National Center." *Id.*, Ex. 12 at 27. |
| B4 | 38 | The Documents enumerated in Plaintiffs' RFP No. 38, which were exhibits admitted into evidence in the proceeding *Dousa v. U.S. Department of Homeland Security*, No. 3:19-cv-01255-TWR-KSC (S.D. Cal.), together with any attachments to those Documents. |
| B5 | 40 | The email excerpted in paragraph 28 of the Complaint in this Lawsuit, together with any attachments to that email. |

---

[1] By email dated April 24, Defendants advised in regard to Item B1 that they have been looking for and are in the process of trying to identify these materials, but Defendants did not provide any further information about their position with respect to producing the materials. Plaintiffs have therefore included this item in their motion to compel due to the central importance of these materials to this case and because the issue has not yet been fully resolved (i.e., Defendants have not yet clearly committed to producing the materials). Nevertheless, in the event that Defendants do complete their investigation into these materials and commit to producing them, Plaintiffs will consider this item to have been resolved.